58 Pa. Commonwealth Ct. 194 (1981)
Susan C. Heller, Petitioner
v.
Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
No. 186 C.D. 1980.
Commonwealth Court of Pennsylvania.
Submitted on briefs, March 4, 1981.
April 2, 1981.
Submitted on briefs, March 4, 1981, to President Judge CRUMLISH and Judges CRAIG and WILLIAMS, JR., sitting as a panel of three.
*195 Terry L. Fromson, for petitioner.
Charles G. Hasson, Assistant Attorney General, with him Richard Wagner, Chief Counsel, and LeRoy S. Zimmerman, Attorney General, for respondent.
OPINION BY JUDGE CRAIG, April 2, 1981:
In this unemployment compensation appeal, the claimant[1] questions the board's[2] denial of compensation and order that she repay benefits, affirming the referee's decision that claimant, a bookkeeper, was ineligible for benefits because she was discharged for willful misconduct.[3]
Claimant worked for Running Press (employer) from January 9, 1979, until her discharge on May 18 of that year. She received benefits until July 9, 1979, when the bureau determined that her separation was the result of willful misconduct.[4]
At the hearing before the referee, the employer's office manager, Mr. Dutkiewicz, began by explaining the reasons for claimant's discharge in completely general terms, without dates or details of any kind. His reasons were: "[claimant] undermined my authority"; "[claimant failed] to adhere to basic office procedures and policies . . . such as standard working hours *196 . . . standard lunch hours"; and "malicious and willful misconduct toward Running Press."
He then sought to present a memorandum he had prepared on June 18, 1979, one month after claimant's termination, the same day he had submitted information on her discharge to the Office of employment Security to protest its award of benefits. He briefly summarized the contents of the memorandum, but his testimony did not contain the specifics in the memorandum.
The memorandum consisted or a detailed, dated summary of conversations with, and warnings to, claimant, along with a description of her alleged misconduct. Dutkiewicz admitted that, "as to my memory of the conversations a lot of information furnished on this record are from memory. Ten percent are from the notes" [he made at the time of the conversations].
Although the referee appeared to reject the memo because it was "not under oath," claimant's attorney having raised a hearsay objection,[5] the memorandum *197 appears in the record of the proceedings, but is not labeled as an exhibit.[6]
The referee found that:
2. In March of 1979 the claimant was warned about her constant lateness in reporting for work and in not calling her supervisor when she was going to be excessively late.

*198 3. When claimant's lateness continued, she was again warned on April 20, 1979, that unless she adhered to basic office policy she would have to be placed on probation. She was also told that unless the quality of her work, her constant lateness, and her poor attitude towards the company and its employees improved, more serious action including termination would have to be taken.
4. Claimant was further warned that she must cease her constant bickering with her supervisor and verbal abuse of her supervisor, and that her extended lunch periods had gone beyond company policy. She was told also that she must stop undermining the authority of the Office Manager in questioning the manner in which he was running the office.
The referee concluded that the claimant's refusal to follow basic office practices, constant tardiness, insubordination and deliberately poor quality of work breached the employer's expectations as to her behavior, and was so inimical to its interests that discharge was justified. The board adopted the referee's findings as supported by substantial evidence. We reverse.
The employer has the burden of proving willful misconduct. Grace v. Unemployment Compensation Board of Review, 50 Pa. Commonwealth Ct. 412, 412 A.2d 1128 (1980). Our function on review is to determine whether sufficient competent evidence supports the findings of fact. Florence v. Unemployment Compensation Board of Review, 51 Pa. Commonwealth Ct. 59, 413 A.2d 784 (1980).
After a thorough review of the hearing transcript, there can be no doubt that the referee based his findings almost exclusively on the memorandum prepared and submitted by the office manager. The referee's *199 terminology matches that of the memorandum, and the specific dates cited by him appear only in the memorandum and nowhere else in the record or testimony. The office manager's independent summary of the memorandum was brief and unspecific, see Parke v. Unemployment Compensation Board of Review, 38 Pa. Commonwealth Ct. 382, 393 A.2d 62 (1978); and much of the remainder of his testimony consisted of hearsay statements, to which objection was made.
When a memorandum is used as direct evidence of the truth of its contents, it must have been prepared at or around the time of the transactions described in order to fit within the so-called recorded recollection exception to the hearsay rule. United States v. F.M. C. Corp., 306 F. Supp. 1106 (E.D. Pa. 1969). Because Dutkiewicz composed the memorandum nearly three months after the events allegedly occurred, it fails to qualify within that exception. Consequently, we must disqualify a substantial portion of the evidence underlying the referee's conclusions as incompetent.
Further examination of the record fails to elicit support for the willful misconduct findings from the manager's testimony, noted above. Conclusory statements, without underlying facts, are insufficient. Parke, supra, 38 Pa. Commonwealth Ct. at 385, 393 A.2d at 63. Not suprisingly, nothing in the claimant's testimony fulfills the employer's burden, because she flatly disputed Dutkiewicz's testimony.
Where the only evidence supporting the findings of the board is hearsay, the record lacks the substantial evidence necessary for this court to affirm a finding of willful misconduct. Montanez v. Unemployment Compensation Board of Review, 50 Pa. Commonwealth Ct. 410, 413 A.2d 16 (1980).
Accordingly, we reverse.

*200 ORDER
AND NOW, April 2, 1981, the order of the Unemployment Compensation Board of Review, dated December 24, 1979, No. B-176609-B, is reversed, and the matter is remanded to the board for computation of benefits.
This decision was reached prior to the expiration of the term of office of Judge WILKINSON, JR.
NOTES
[1] Susan Heller.
[2] Unemployment Compensation Board of Review.
[3] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).
[4] In her initial application, claimant specified that she was being "let go" because the owners of the company felt there was no future for her with them. The UC-100 card stated "laid off-lack of work" as the reason for separation.
[5] Employer Representative:

Also, I'd like to add transcripts of two conversations. Three that Susan and myself had. I'd like to enter these into the records. This is based Susan's . . .
Referee:
Just a moment. Rather than try to enter transcripts you can testify and Susan will be allowed to answer you.
. . . .
Referee:
. . . And Mr. Dutkiewicz if you wish to give this in your own language I prefer that to accepting this because what you give in your own language your [sic] giving under oath. So make up your own mind possibly with consent or demurring from Miss Fromson.
. . . .
Claimant Attorney:
Okay I would initially like to object to the June 18th notation as it was . . .
Employer Representative:
May 18th?
Claimant Attorney:
Well it says June 18th. This is completed a month after.
Employer Representative:
Right.
Claimant Attorney:
The termination. And was not made at the time. And I object to it as hearsay. And I will object to the document entertaining conversations as they are also it was also made several months later and as Mr. Dutkiewicz will explain on the record. Was not made was made this morning in preparation for this hearing.
Referee:
Okay your objection is noted. Is there anything that you wish to testify to Mr. Dutkiewicz?
Employer Representative:
I think you know the letter speaks for itself in regard to my my challenging Susan's collecting unemployment.
Referee:
This letter of June 18th or this letter you wish to present this as evidence?
Employer Representative:
I would like to have it presented as evidence.
Referee:
I have just explained to you that this letter is not under oath. If you wish to get the various points and testify to them it will (inaudible) under oath. Now I know that your objection so I'm going to note to her objection and ask you to go ahead and summarize this sheet.
[6] The memorandum, which is typed on the employer's stationery, is labeled "Item No. 5 Additional Employer Information" in the official record, and bears the notation "Advice only" at the top of the page.